# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

One white LG touch screen cell phone, IMEI 014065-00-547494-2, more fully described in Attachment A.

Case No. 18-M-1204

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

One white LG touch screen cell phone, IMEI 014065-00-547494-2, more fully described in Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

Title 18, United States Code, Sections 1951 and 2 (Hobbs Act Robbery).

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Erin Lucker, FBI Special Agent
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: 1/10/18

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

William E. Duffin, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Erin Lucker, being first duly sworn, hereby depose and state as follows:

## I. BACKGROUND

1. I have been a Special Agent of the Federal Bureau of Investigation (FBI) since November 2016. I am currently assigned to the Milwaukee Office of the FBI. During my career in law enforcement, I have participated in violent crime investigations. I am currently assigned to the FBI Milwaukee Violent Crimes Task Force, which involves investigations of violent crimes, including kidnappings, extortions, murder for hire, and bank and armored car robberies.

2. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.

3. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4. There is probable cause to believe that violations of Title 18, United States Code, Section 1951(a) (Hobbs Act Robbery) have been committed by several individuals, to include John T. Evans, Lamont D. Harris, and Jason S. Williams.

5. This affidavit is submitted in support of an applications for search warrants for the following electronic devices ("Devices"), which are currently in evidence at the Milwaukee Division of the Federal Bureau of Investigation, for evidence of involvement in Hobbs Act robbery described below, in violation of Title 18, United States Code, Sections 1951(a):

    a. One black LG touch screen cell phone, IMEI 354885-07-528088-9 (Device #1)

1

b. One white LG touch screen cell phone, IMEI 014065-00-547494-2 (Device #2)

6. Because this affidavit is submitted for the limited purpose of securing authorization for a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for orders authorizing searches of the locations described above.

## II. Probable Cause

### A. Cell Phone Store Robberies

1. On April 24, 2017, at approximately 7:52 p.m., two unidentified black males robbed the Metro PCS located at 5606 75th St., Kenosha, WI. The robbers entered the store, and asked the store employee, K.N., about phone chargers. While K.N. was showing the taller suspect (Suspect 1) the charger, Suspect 1 pulled a black handgun from his right side. Suspect 1 held the gun to K.N.'s head and told K.N. to give him all of the money from the register. While Suspect 1 took money from the register, the shorter suspect (Suspect 2) duct taped K.N.'s hands behind his back and put duct tape over his mouth. Suspect 2 then put phones from the store in a white bag. Suspect 2 took K.N.'s personal phone, but then gave it back to K.N. The robbers stole $100, 47 phones, and 19 SIM cards. After the robbers left, K.N. broke free from the duct tape and called police. No video surveillance was recovered because the store had only been open for two days and security cameras had not been installed.

2. Investigators interviewed an individual at a store located in the same building as Metro PCS. She stated that, on April 24, 2017, at approximately 7:45 pm (same time as the robbery occurred), she observed a white four-door vehicle sitting in the parking lot facing the building to the West of the store, with three black male occupants.

2

3. On April 27, 2017, at approximately 6:55 p.m., two unidentified black males robbed the Spring Mobile AT&T cell phone store located at 7115 Durand Ave. #1, Mount Pleasant, WI. The two robbers entered the cell phone store and asked the store employee, K.N., to look at headphones. As K.N. was bending over to grab some headphones, the taller suspect (Suspect 1) stated, "This is a stick up, get into the back." K.N. turned around and saw Suspect 1 pointing a black handgun at his chest. Suspect 1 states, "Work with me, don't be a hero. I don't want to see any blood." The suspects asked K.N. where the safe was located. The shorter suspect (Suspect 2) then told K.N. to put his hands behind his back. Suspect 2 duct taped K.N.'s hands behind his back and his two legs around the ankles. K.N. could hear the suspects taking cell phones out of the safe. In addition to stealing 53 cell phones in the safe, the suspects also stole K.N.'s cell phone and wallet.

4. After the suspects fled, K.N. broke free of the duct tape and called the police. During a search of the surrounding areas, police found a split open black garbage bag and 24 new cell phones in the Batteries Plus parking lot. The police also located K.N.'s cell phone near the black garbage bag and cell phones.

5. Several fingerprints were recovered from the 24 cell phones, duct tape, and garbage bag. The Wisconsin Crime Lab located fingerprints belonging to Lamont Deon Harris on the duct tape and on one of the recovered iPhones. In addition, the Wisconsin Crime Lab located fingerprints belonging to Jason S. Williams on one of the recovered iPhone boxes.

6. Still photographs obtained from the surveillance at the Spring Mobile AT&T during the time of the robbery depict the two individuals who robbed K.N. One robber was wearing a hat, but neither robber wore masks covering their faces. Law enforcement showed the still photographs from the Spring Mobile AT&T robbery to the store employee of Metro PCS,

3

Case 2:18-mj-01204-WED   Filed 03/02/18   Page 4 of 17   Document 1

who was robbed at gunpoint on April 24, 2017. The Metro PCS store employee indicated that he was 75-85% sure that Suspect 1 in the second robbery resembled the man who pointed a gun at his head and robbed him. The victim stated that he had similar facial features, skin tone, and overall physical build as the man who robbed him. As to Suspect 2, the victim stated that he looked familiar but that he was unsure at the time.

7. A witness interviewed after the April 27, 2017 robbery indicated seeing a male running through a parking lot carrying a garbage bag, which broke and caused cell phone boxes to spill all over the ground. This witness observed the male throw the white cell phone boxes into the trunk of a white car, which was observed in the lot. A white sedan was observed on security cameras located near the robbery locations as well as on squad video. Law enforcement responding to the robbery captured an image and license plate of a four-door white Chevrolet Malibu bearing WI registration 999XGD, which is registered to Eunice Jones at 93XX Florence Drive in Sturtevant, Wisconsin. Law enforcement has further determined that John Evans also resides at 93XX Florence Drive in Sturtevant, Wisconsin.

8. Based on the similarity of the above-described robberies and the Metro PCS victim's identification of the robbers as detailed in Paragraph 6, on May 15, 2017, United States Magistrate Judge William E. Duffin ordered certain wireless service providers to disclose records and information associated with cellular telephone towers that provided cell service to each of the robbery locations at and around the time of the above-described robberies.

9. Based on the records and information obtained from the service providers that provided cell service to each of the robbery locations, law enforcement officials have determined that the phone numbers 224-237-4678 and 262-237-3724 were in contact with one another during and around the time of both robberies. In other words, the individuals using these

4

numbers make phone contact with one another during and around the time of the robbery of Metro PCS in Kenosha, Wisconsin and during and around the time of the robbery of Sprint Mobile AT&T in Mount Pleasant, Wisconsin.

10. Specifically, on April 27, 2017 at 6:53:41 p.m., Harris, using phone number 224-237-4678, places a call to John Evans at 262-237-3724. In addition, Harris, using 224-237-4678, makes approximately nine calls to Evans at 262-237-3724 over the following five minutes (6:53:41 p.m. to 6:58:11 p.m.).

11. On April 24, 2017, Harris, using 224-237-4678, makes an outgoing call to Evans at 262-237-3724 at 7:51:03 p.m. A previously states, the robbery of the Metro PCS occurred around 7:52 p.m. on April 24, 2017.

12. Law enforcement believes Lamont Harris was operating 224-237-4678 because on April 27, 2017, surveillance video showed Harris using a cell phone at 6:53:38 p.m. central time, which matches an outgoing call on a cell tower near Spring Mobile AT&T at 6:53:41 p.m. Furthermore, Lamont Harris was arrested by the Greenfield Police Department on August 6, 2017, and he provided to law enforcement the number 224-237-4678 as his own at this time.

13. Law enforcement further believes that John Evans was operating 262-237-3724 because that number lists to him in the Racine County law enforcement records, social media (Facebook), and Lexis Nexis records.

14. On August 25, 2017, United States Magistrate Judge William E. Duffin ordered AT&T to provide information about the location of 224-237-4678. On October 10, 2017, Magistrate Judge Williams E. Duffin ordered an extension to AT&T regarding the location of 224-237-4678. On October 11, 2017, law enforcement officers conducted surveillance in the area of Winthrop Harbor, Illinois, where telephone number 224-237-4678 was located. Law

5

enforcement officers made contact with Harris at the Abode Motel, 1128 Sheridan Road, Room 2, Winthrop Harbor, Illinois. Harris was arrested pursuant to a warrant issued by Magistrate Judge William E. Duffin on August 25, 2017.

15. On October 8, 2017, law enforcement in Zion, Illinois viewed surveillance stills from the armed robbery of Spring Mobile AT&T, 7115 Durand Ave. #1, Mount Pleasant, Wisconsin, which occurred on April 27, 2017. Law enforcement identified one of the subjects as Jason S. Williams, indicating police had contact with Williams in June 2017 after receiving a complaint regarding Williams.

16. A comparison of the robbers, who were not masked, depicted in the surveillance video from the April 27, 2017, robbery of Spring Mobile AT&T with a driver's license identification photograph of Williams reveals substantial similarity between the robber pointing the gun and Williams.

17. On October 25, 2017, United States Magistrate Judge Nancy Joseph issued an arrest warrant for Jason Williams. On November 3, 2017, at approximately 10:13 p.m., law enforcement officers from the Chicago Police Department encountered Williams sleeping in a parking lot located at 7850 South Yates, Chicago, Illinois. Officers subsequently arrested Williams after database checks reveled Williams had an active warrant.

18. On November 6, 2017, FBI Special Agents took custody of Williams, transported him to FBI Chicago, 2111 West Roosevelt, Chicago, Illinois, and read him his *Miranda* rights. Thereafter, Williams agreed to speak to the Special Agents.

19. Williams confessed to robbing the AT&T store in Mount Pleasant, Wisconsin with John Evans and Lamont Harris. Williams stated the robbery was Evans' idea because Evans lived near the store. Evans drove Williams and Harris to the AT&T store in Evans' newer model

6

white Chevrolet sedan. Williams and Harris entered the store and took approximately 30 phones from the back room. Williams and Harris were picked up by Evans in the white Chevrolet sedan.

20. After the robbery, Evans drove Williams and Harris to the west side of Chicago to sell the phones. Williams stated Evans was in telephonic contact with an unknown male, who bought the phones. Evans sold the phones for approximately $1,500, which was split equally between Williams, Harris, and Evans. Williams stated he and Harris had to give Evans money for gas and a ride home.

21. Williams also confessed to robbing another cell phone store in Milwaukee, which occurred before the AT&T robbery. Williams stated that Evans drove his white Chevrolet sedan, and that Williams and Harris went in to the store. Williams believed he and Harris stole approximately 20 phones.

22. Williams further stated that after the robbery, Evans drove Williams and Harris to Chicago, Illinois. Williams stated he did not receive any proceeds from the robbery because Evans stated he (Evans) was waiting for someone to purchase the phones.

23. On November 16, 2017, under federal proffer, a cooperating defendant confessed to participating in the robbery of Metro PCS on April 24, 2017, and of the Spring Mobile on April 27, 2017. The cooperating defendant stated that he committed these robberies with Jason Williams and John Evans. In each robbery, Evans drove him and Williams in a white Chevrolet Malibu, and he and Williams entered the store to commit the robbery. According to the cooperating defendant, he, Williams, and Evans planned to rob an AT&T cell phone store because Evans worked for AT&T and knew where items were located throughout the store.

24. After discussing plans to rob an AT&T cell phone store, the cooperating defendant, Williams, and Evans were driving in Kenosha, Wisconsin on April 24, 2017. At one

point, Williams or Evans noticed that there were no customers in the Metro PCS located at 5606 75th St., Kenosha, Wisconsin. Even though the robbery of the Metro PCS was not planned, they used the same plan they discussed for the Sprint store.

25. Evans dropped Williams and the cooperating defendant at the Metro PCS. The cooperating defendant grabbed duct tape that was located in Evans' vehicle, which he used to duct tape the employee's hands together. He then took a plastic bag from the store and placed several cell phones into the bag. He and Williams fled the store, and Evans picked them up in the white Chevrolet Malibu.

26. The cooperating defendant believed that he took approximately 15 cell phones and an unknown number of SIM cards, and that Williams took an unknown amount of money from the register.

27. After the robbery, Evans drove to Chicago, Illinois, with Williams and the cooperating defendant still in the white Chevrolet Malibu. During the drive to Chicago, Evans was making calls to an unknown individual to sell the cell phones taken during the robbery. Evans met with an unknown individual at a gas station. The cooperating defendant received approximately $400 of the proceeds from the robbery.

28. On April 27, 2017, Evans called the cooperating defendant and asked if he was ready. Evans picked up him and Williams in the white Chevrolet Malibu and drove to Spring Mobile, located at 7115 Durand Ave., Mount Pleasant, Wisconsin. Evans drove to a Menard's parking lot and told him and Williams to walk to the store. Williams walked past Spring Mobile first to see if there were any customers inside. He and Williams waited a few minutes before entering the store.

8

29. When he and Williams entered the store, he asked the employee where the head phones were located. Williams then moved the employee to the back of the store. The cooperating defendant indicated that he duct taped the employees hands together before taking two plastic bags from the store and filling them with cell phones. After the robbery, he called Evans on the phone, and Evans told him that he (Evans) was at a nearby gas station. Evans told him to walk towards the Batteries Plus, where Evans picked up him and Williams. The bag Williams was carrying split open near Evans' car in the Batteries Plus parking lot, and Williams lost some of the phones.

30. After the robbery, Evans drove to Chicago, Illinois, with the cooperating defendant and Williams still in the vehicle. Similar to the Metro PCS robbery, Evans was on the phone with an unknown individual setting up a meeting to sell the phones. Evans met with an unknown individual in a gas station parking lot. The cooperating defendant stated that he received $2,000 of the proceeds from the robbery.

**B. Cell Phone Store Burglaries**

31. The cooperating defendant further stated that he also conducted burglaries of cell phones stores with Evans. He stated that he burglarized a Sprint store near 27th Street and the Suburban Motel in August or September 2017. Evans told the cooperating defendant the layout of the store and the alarm code to get in to the back room where the phones were kept. According to the cooperating defendant, he threw a rock through the front window of the business. The main store alarm went off, but he was able to disarm the alarm for the back room. He put approximately 15 to 20 cell phones in to a backpack and left the store. Evans drove him to the store in the White Chevrolet Malibu and dropped him off after the burglary.

9

32. After the burglary, Evans drove to the Chicago, Illinois area with the cooperating defendant still in the vehicle. Evans sold the phones to an unknown individual. The cooperating defendant stated that he received approximately $3,500 from the sale of the cell phones, and he believed that Evans split the proceeds of the sale equally.

33. A search of Milwaukee Police Department (MPD) records revealed an incident on August 18, 2017 at a Sprint store located at 4550 S. 27th Street, Milwaukee, Wisconsin. At approximately 4:28 a.m., the Sprint store manager was notified of an alarm at the store. The manager arrived at the store and observed the front window smashed. MPD officers were dispatched to the scene to make a report.

34. Additionally, the cooperating defendant stated that he conducted a second burglary of a Sprint store with Evans in Kenosha, Wisconsin in September or October 2017. Evans picked up the cooperating defendant and drove to the Sprint store in Kenosha, where the cooperating defendant believed Evans worked. Evans told him the alarm code to get in to the back room where the phones were kept. Evans dropped him off near the Sprint store. He threw a rock through the front window of the business and gained entry to the back room. He then put approximately 15 to 17 cell phones in to a backpack and left the store. Evans then picked him up.

35. The day after the burglary, Evans drove him to Chicago, where he met with an unknown male at a mall to sell the phones. He received approximately $2,000 from the sale of the cell phones. Evans told him the money was split equally between them.

36. A search of Kenosha Police Department (KPD) reports revealed an incident at Sprint, 7520 Pershing Boulevard, Kenosha, Wisconsin on September 6, 2017. At approximately 1:57 a.m., officers were dispatched to the Sprint store for an alarm. Upon arriving at the scene, officers noticed a window pane had a large hole and a soccer ball-sized boulder was inside the

business on the floor. Surveillance video showed one subject enter the business and proceed to fill a plastic bag with cell phones from a back room. Employees at the Sprint store indicated that Evans had recently started working at their location after being let go from the Milwaukee location. Employees further stated that the Milwaukee store had been broken in to in a similar manner, and that management suspected Evans was involved.

37. On November 20, 2017, United States Magistrate Judge William E. Duffin issued an arrest warrant for John T. Evans. On November 30, 2017, law enforcement conducted surveillance on Evans' residence, 93XX Florence Drive, Sturtevant, Wisconsin. At approximately 7:00 p.m., law enforcement observed Evans exit the residence and enter a white Chevrolet Malibu bearing Wisconsin license plate 999XGD. Law enforcement subsequently conducted a traffic stop near I-94 and Highway 11 of the white Chevrolet Malibu. Law enforcement approached the vehicle and identified the driver as John T. Evans via a Wisconsin Driver's License.

38. Once Evans exited the vehicle per law enforcement's request, law enforcement advised Evans that he was wanted on a felony warrant and arrested Evans. Law enforcement asked Evans for consent to search the Chevrolet Malibu, and Evans refused consent. At the time of his arrest, Evans requested law enforcement retrieve a cell phone that was inside of his vehicle and plugged in. Detective Haleen retrieved the cell phone, identified as Device #1. The cell phone was taken as Evans' personal property, and placed in evidence at Mount Pleasant Police Department.

39. Law enforcement conducted an open air sniff on the exterior of the Chevrolet Malibu with a K9 dog. The K9 dog alerted on the vehicle near the open, front driver's side window by biting at the pillar of the vehicle.

11

40. On December 11, 2017, United States Magistrate Judge David E. Jones issued a search warrant for the white Chevrolet Malibu, VIN 1G11H5SA6DU123390, and Wisconsin license plate 999XGD. On December 14, 2017, the search warrant was executed at Mount Pleasant Police Department, where the vehicle was being held. A search of the vehicle revealed Device #2 on the front passenger's side seat.

## III. TECHNICAL TERMS

41. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can

also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

42. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices. This information can sometimes be recovered with forensics tools.

43. *Forensic evidence.* As further described in Attachment B, this applications seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

13

44. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

45. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is a reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. CONCLUSION

46. Based upon the foregoing, I believe there is probable cause that Lamont D. Harris, John T. Evans, and Jason S. Williams engaged in the robbery of Metro PCS in Kenosha, Wisconsin on April 24, 2017, and the Spring Mobile AT&T in Mount Pleasant, Wisconsin on April 27, 2017, in violation of Title 18, United States Code, Sections 1951(a) and 2 (Hobbs Act Robbery). I believe that probable cause also exists to search the Devices, which are more particularly described in Attachment A, and which are currently located in evidence at Milwaukee Division of the Federal Bureau of Investigation, for evidence of these crimes, as described in Attachment B.

## Attachment A

This warrant applies to search of the following location:

    a. One black LG touch screen cell phone, IMEI 354885-07-528088-9 (Device #1)

    b. One white LG touch screen cell phone, IMEI 014065-00-547494-2 (Device #2)

**Attachment B**

1. All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 1951 (Hobbs Act robbery) involving Lamont D. Harris, John T. Evans, and Jason S. Williams, including, but not limited to the following:

    a. Any information related to the possession or sale of cellular telephones or other electronic devices;

    b. any information related to possession of firearms (including photographs, text messages, emails, or any other communication information);

    c. any information related to the accruing of robbery proceeds (including photographs, text messages, emails, or any other communication information);

    d. any information recording any targets' schedule or travel on April 24, 2017 and April 27, 2017;

    e. any web search information related to the offenses described above;

    f. photographs of locations evidencing pre-robbery surveillance;

    g. any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

    h. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.